Anna Y. Park, SBN 164242
Sue J. Noh, SBN 192134
Lorena Garcia-Bautista, SBN 234091
Nakkisa Akhavan, SBN 286260
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1083
Facsimile: (213) 894-1301
E-Mail: lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>VXI GLOBAL SOLUTIONS, INC., A/K/A VXI GLOBAL SOLUTIONS, LLC; and Does 1-10 Inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT—TITLE VII**<br>• **Sexual Harassment**<br>• **Retaliation**<br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Charging Parties and other individuals who were adversely affected by such practices. As set forth

-1-

with greater particularity in this Complaint, Plaintiff United States Equal Employment Opportunity Commission ("Plaintiff" or "Commission") alleges that Defendants VXI Global Solutions, Inc. a/k/a VXI Global Solutions, LLC ("VXI Global") and Does 1-10, inclusive (collectively referred to herein as "Defendants"), subjected Charging Parties Charisse Bates, Tiffeny Burke, Jazmina Mayorga, Jadesha Peter, Lashelle Tatum, and Tabitha Woolley ("female Charging Parties"), and other adversely affected female employees to sexual harassment during their employment with Defendants. Further, Plaintiff alleges that Defendants subjected Charging Parties Anthony Bracy, Nicolas Corral, Ambrose Elias ("male Charging Parties"), and other adversely affected male employees to sexual harassment during their employment with Defendants.

Further, Plaintiff alleges that Defendants subjected Charging Parties and other adversely affected employees to retaliation for complaining, reporting, and/or engaging in protected activity regarding such unlawful practices, resulting in some instances to termination; and to retaliation due to their association with individuals opposing unlawful employment practices.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to §§ 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed company-wide with most of the unlawful employment practices were and are now being committed within the jurisdiction of the United States District Court for the Central District of California.

## PARTIES

3. The Commission is an agency of the United States of America,

charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3), Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant VXI Global has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

5. At all relevant times, Defendant VXI Global has continuously been a corporation doing business in the State of California, and has continuously had at least 15 employees.

6. At all relevant times since 2008, Defendant VXI Global has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7. At all relevant times since 2008, Defendant VXI Global has been a corporation doing business in the State of California, and had at least 15 employees.

8. All of the acts and failures to act alleged herein were duly performed by and attributable to all Defendants each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendants acting individually, jointly, and/or severally.

9. Plaintiff is ignorant of the true names and capacities of each Defendant sued as DOES 1 through 10, inclusively, and therefore Plaintiff sues said Defendants(s) by fictitious names. Plaintiff reserves the right to amend the

complaint to name each DOE Defendants individually or collectively as they become known. Plaintiff alleges that each DOE Defendants was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when the same shall have been ascertained by Plaintiff.

### CONDITIONS PRECEDENT

10. More than thirty days prior to the institution of this lawsuit, Charging Parties Charisse Bates, Tiffeny Burke, Jazmina Mayorga, Jadesha Peter, Lashelle Tatum, Tabitha Woolley, Anthony Bracy, Nicolas Corral, and Ambrose Elias filed their charges of discrimination with Plaintiff alleging violations by Defendants of Title VII.

11. The Commission investigated the charges of discrimination against Defendants.

12. Plaintiff issued Letters of Determination finding that Charging Parties Tiffeny Burke, Jazmina Mayorga, Jadesha Peter, Lashelle Tatum, Tabitha Woolley, Anthony Bracy, Nicolas Corral, Ambrose Elias, and a class of other adversely affected individuals who were subjected to unlawful employment discrimination based on their sex and retaliation in violation of Title VII.

13. Plaintiff also issued a Letter of Determination finding that Charging Party Charisse Bates and a class of other adversely affected individuals who were subjected to unlawful employment discrimination based on their sex and retaliation in violation of Title VII.

14. Prior to instituting this lawsuit, Plaintiff attempted to eliminate the unlawful employment practices herein alleged and to effect voluntary compliance with Title VII through informal methods of conciliation, conference, and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. Sections 2000e-5(b) and 2000e-6.

15. All conditions precedent to this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

16. Since at least 2009, Defendants have engaged in unlawful employment practices of such wrongful acts in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. Section 2000e-2(a), 2000e-3(a) by subjecting Charging Parties and a class of individuals who were also subjected to a sexually hostile work environment and to retaliation ("adversely-affected employees").

17. From 2008 to the present, Defendant VXI Global is an international company which has provided services to businesses, including call center services.

18. From 2008 to the present, Defendant VXI Global has over 500 employees.

19. Starting no later than 2009, Supervisor Nicholson, other supervisors, and/or co-workers subjected the female Charging Parties and other adversely affected female employees to severe or pervasive sexual harassment. Supervisor Nicholson, other male supervisors, and/or co-workers engaged in verbal harassment, which included but not limited to sexual comments about the female employee's breasts, buttocks, and genitalia. Other sexually harassing comments included but not limited to expressing a desire to perform sexual acts on a female employee and/or to be breastfed by a female employee; joking about wanting to rape a female employee; and talking about engaging in a threesome with a female employee. Supervisor Nicholson, other male supervisors, and/or co-workers engaged in physical sexual harassment which included but not limited to groping a female employee's breasts, unwanted touching of a female employee's shoulders, arms, legs, hands, and bodies, pinning a female employee against the wall, and grabbing a female employee's arm and pulling her toward the male supervisor. Supervisor Nicholson, other male supervisors, and/or co-workers also engaged in visual sexual harassment including, but not limited to, showing pornographic pictures or images of naked women; and of male and female genitalia. The sexually harassing behavior by male supervisors and/or co-workers also included,

but is not limited to, the following: constantly asking the female employees out on dates; unwelcome hugs; a supervisor removing his belt and smacking a female employee with it; a supervisor grabbing a female employee's arms to pin her down while making an inappropriate comment about "liking it rough," and a supervisor telling a female employee that she has "pretty feet" and if he was not married he would "piss on them."

20. Starting no later than 2009, Supervisor Nicholson, other supervisors and/or co-workers subjected the male Charging Parties and other adversely affected male employees to severe or pervasive sexual harassment. Female supervisors and/or co-workers engaged in verbal sexual harassment of the male employees, including but not limited to expressing a desire to suck a male employee's genitalia, asking for sexual favors, and asking to perform a lap dance on a male employee. The female supervisors and/or co-workers engaged in physical sexual harassment including, but not limited to: a female supervisor placing her breasts close to a male employee, a female supervisor giving unwanted back massages to male employees, and a female supervisor attempting to give a male employee a lap dance. Supervisor Nicholson, other supervisors and/or co-workers engaged in visual sexual harassment which included, but was not limited to showing male employees pornographic pictures or images of naked women, female breasts, and genitalia. When the male employees objected to the sexual comments or to the sexual images being shown, they were subjected to further sexual harassment through sexual stereotyping for not being what a man should be by being called a "fag" or "gay."

21. The Charging Parties and the other adversely affected employees did not welcome the sexual harassment by Supervisor Nicholson, other supervisors, and/or co-workers. The Charging Parties and other adversely affected employees demonstrated that the sexual harassment was not welcomed which included, but was not limited to, voicing their objections or dislike for the sexually harassing

conduct, complaining to Human Resources and/or their supervisors, and/or filing a complaint with the EEOC.

22. Voicing objections to the sexually harassing conduct resulted in additional harassment such as threats and intimidation to the Charging Parties and other adversely affected employees. The additional harassment included, but was not limited to, threats such as "snitches get stitches" and/or unjustified disciplinary notices and warnings.

23. The harassment was sufficiently severe or pervasive to alter the conditions of the Charging Parties and other adversely-affected employees' employment and created a sexually hostile work environment. The Charging Parties and other adversely affected employees reasonably perceived their work environment to be sexually abusive or hostile work environment, resulting in some of the Charging Parties and adversely affected employees having to take days off or to take extended leave due to the stress.

24. Defendants knew or should have known of the sexual harassment of the Charging Parties and other adversely affected employees. The reasons include but are not limited to the pervasive and constant sexual harassment by multiple supervisors and/or co-workers of the Charging Parties and other adversely affected employees. Such pervasive and constant sexual harassment occurred in a workplace with an open floor plan so that the sexual harassment could readily be heard and seen by the Defendants' management. Further, the Charging Parties and other adversely affected employees complained about the sexual harassment to their supervisors, to Human Resources, and/or to the EEOC, which then notified Defendants about the complaints.

25. Once Defendants knew or should have known of the sexual harassment of the Charging Parties and other adversely-affected employees, Defendants failed to take prompt and effective remedial action reasonably calculated to end the harassment. Defendants' failures included but not limited to

its failure to conduct an investigation or conducting an inadequate investigation in response to the complaints, which included but not limited to not interviewing and considering all the necessary witnesses. Defendants' failures also included but not limited to inadequate discipline of the harassing supervisors and/or co-workers for sexual harassment. Defendants also failed to offer training of its policy against sexual harassment and complaint procedure especially to its non-management employees to ensure that they knew that it took sexual harassment seriously. As a result, the sexual harassment continued even after Defendants started to receive complaints from the Charging Parties and other adversely affected employees.

26. In addition, Defendants failed to take reasonable steps to prevent sexual harassment. Defendants' failures included but not limited to having an inadequate sexual harassment policy which failed to define sexual harassment and having no or inadequate training especially to its non-management employees of its policy against sexual harassment and complaint procedures.

27. The Charging Parties did not unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or unreasonably failed to otherwise avoid harm. The working environment at Defendants deterred complaints about sexual harassment. Supervisor Nicholson, other supervisors, and/or co-workers threatened and issued warnings to discourage complaints. The threats included but not limited to the warning that snitches get stitches. Defendants' Human Resources office had a closed door policy requiring appointments which were difficult to get and were often cancelled, discouraging employees from making complaints of sexual harassment. Despite these obstacles, complaints were made by the Charging Parties and other adversely-affected employees to a member of management, to Human Resources, and/or to the EEOC, which then notified Defendants of the complaints.

28. Defendants retaliated against the Charging Parties and other employees who engaged in an activity protected by Title VII. The protected

activity included but not limited to complaining to a member of management, complaining to Human Resources, and/or complaining to the EEOC. Because of having engaged in such protective activity and/or being associated with another employee engaged in such protective activity, the Charging Parties and other adversely affected employees were subjected to actions where a reasonable employee would have found to be material adverse or actions which might have dissuaded a reasonable worker from making or supporting a claim of discrimination. The adverse employment actions included but not limited to additional threats such as snitches get stitches; and intimidating acts such as requiring some of the Charging Parties and adversely affected employees to attend a book event where the book was about violence against those who complained about wrongdoing. The adverse employment actions also included but not limited to unjustified terminations and disciplinary write-ups.

29. The effect of the practices complained of in paragraphs 16 to 28 above has been to deprive Charging Parties and other adversely affected individuals of equal employment opportunities and otherwise adversely affects their status as employees because of their sex.

30. The effect of the practices complained of in paragraphs 16 to 28 above has been to deprive Charging Parties and other adversely affected individuals of equal employment opportunities and otherwise adversely affects their status as employees because of their engagement in protected activities in opposition to unlawful employment practices and/or their association with individuals who engaged in such activities.

31. The unlawful employment practices complained of in paragraph 16 to 28 above were intentional and caused Charging Parties and adversely affected employees to suffer emotional distress.

32. The unlawful employment practices complained of in paragraphs 16 to 28 above were and are done with malice or with reckless indifference to the

federally protected rights of Charging Parties and other adversely affected individuals.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, its officers, successors, agents, servants, employees, attorneys, and all persons in active concert or participation with them from engaging in sexual harassment, retaliation, and any other employment practice which discriminates on the basis of sex.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendants to make whole Charging Parties and other adversely affected individuals in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Charging Parties or front pay in lieu thereof.

D. Order Defendants to make whole Charging Parties and other adversely affected individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 16 to 32 above, including but not limited to backpay and prejudgment interest on lost pay and benefits in amounts to be determined at trial.

E. Order Defendants to make whole Charging Parties and other adversely affected individuals by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraph 16 to 32 above, including but not limited to emotional pain, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.  Order Defendants to pay Charging Parties and other adversely affected individuals punitive damages for its malicious and reckless conduct described in paragraphs 16 to 32 above, in amounts to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: September 18, 2014         Respectfully Submitted

P. DAVID LOPEZ,
General Counsel

JAMES LEE,
Deputy General Counsel

GWENDOLYN YOUNG REAMS,
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 "M" Street, N.E.
Washington, D.C. 20507

By: _____
ANNA Y. PARK
Regional Attorney

SUE NOH
Supervisory Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION